Today is number 182154, Honorable Ricardo Rossello Nevares et al. Courses of Financial Oversight and Management Board for Puerto Rico et al. May it please the Court, Your Honors. My name is Peter Freedman from El Melvinian Myers on behalf of FOF and the Governor of Puerto Rico. I'd like to reserve four minutes of my time for a rebuttal.  Thank you, Your Honor. As the Supreme Court has observed for over 60 years, Puerto Rico has governed itself with the degree of autonomy and independence normally associated with the states of the Union. When Congress passed the statute permitting a devolving self-government to Puerto Rico, the U.S. Senate noted in a section of the legislative history entitled Government by Consent that Puerto Rico would be a self-governing community bound by the common loyalties and obligations of American citizens, living under the American flag and the American Constitution, and enjoying a Republican form of government of their own choosing. And I recognize that PROMESA changed that, but PROMESA didn't destroy that. And our interpretation of PROMESA balances the sacred rights that Congress talked about when it devolved self-rule with the oversight that's specifically set forth in the PROMESA statute. The Board's interpretation of PROMESA eviscerates any vestiges of home rule. Now, the specific issue here is whether the Board may, by inserting recommendations into a fiscal plan or budget, make them binding or mandatory on the government of Puerto Rico. And that means recommendations of any sort. And we submit that that exceeds the Board's powers. And one way to understand that and know that is to look at Section 209 of PROMESA, which identifies when the Oversight Board terminates. Section 209 of PROMESA says that the Oversight Board shall terminate when Puerto Rico has adequate access to credit markets, has developed its budgets in accordance with modified accrual accounting standards, and has created a balanced budget for four consecutive years. Those relate to fiscal matters, not the implementation of any policy proposal or recommendation that the Oversight Board has ever put into a fiscal plan. Now, I recognize that some of this may be counterintuitive and counter to a narrative that has seeped into the public's consciousness about what PROMESA means and the powers the Oversight Board has been given. I don't understand the other side to have made the argument that you, in its extreme form, seem to be addressing. I don't see them as saying that anything they recommended under 205 can be put into a plan without consent. I see the argument simply being that if they otherwise have the power, under, for example, 201, the fact that 205 may encompass it or, indeed, that they seek agreement under 205 doesn't divest the Board of that power that it otherwise would have had in 201. And if that's the correct analysis, then the whole question is, with respect to these three things that are at issue here in this case, does 201 or something else in PROMESA authorize the Board to do that? Your Honor, I understand the Board to be saying that if they put something into 201-K as a recommendation, and I think what Judge Swain held was that becomes binding on the government. And I think that raises two questions. First, is it still a recommendation if it's under 201-K? And we believe that it is. Second, what does it mean to be binding? And I think what it means to be binding is, is it enforceable? And to look at whether something is enforceable, I think you have to look at Section 204 of PROMESA. Let me ask it this way. Let's assume, take one of these automatic future budget reductions. Yes, Your Honor. If the Board has the ability to unilaterally put that into a fiscal plan or budget under 201, then are you maintaining that 205 somehow takes that power away should it first seek consent? So, yes, I think there are two problems with that kind of provision. One is that to put it into a budget exceeds the budgeting power that the Board has. But that wasn't my question. My question was, certainly if nothing in PROMESA gives it the power, then you're on to your argument that making the recommendation doesn't. But my question was, if 201 does authorize the inclusion in the buzzer of the provision, the challenge provision regarding automatic future budget reductions, then does the fact, are you arguing that the fact that the Board first sought consent before unilaterally doing what 201 would have authorized, that that then divests the Board of the power to do that? No. I think it remains a recommendation, however, under 201K. And, again, the specific example you gave is particularly problematic because there's actually a provision in Section 203 of PROMESA that deals with budget adjustments and says when budget adjustments have to occur. So I don't think the Board can eviscerate the limitations of Section 203 of PROMESA by putting something into a fiscal plan. Section 203 of PROMESA says that at the end of each quarter, the Governor has to issue a report as to the amount of money spent. If the amount of money spent exceeds the budget, then a certain process has to come into play and budgetary reductions can be made. Before you get too far down the road, I don't know whether you've answered Judge Kayada's question to his satisfaction, but I don't think you've answered what I thought he was asking you. So I just want to make sure I'm clear on this. If a requirement, a binding requirement, is authorized for the Board to require, does the fact that it also did a recommendation under 205 mean that it can no longer be a requirement? No, Your Honor. I don't think the fact that it was submitted during the middle of the year as a 205 recommendation means it can't later be included in a fiscal plan. So the whole argument, then, we can kind of ignore 205. The real issue with respect to, for example, automatic future budget reductions is does PROMESA, anything in PROMESA, authorize the Board to impose that? I don't think you can ignore it because 201K refers to 205 in setting forth what's a recommendation. And we believe that the fact that 201 uses the word recommendation means that whether it's in 205 or 201, it's still a recommendation. It does more than say recommendation. It says appropriate recommendation. And what do you understand to mean appropriate recommendation? I think that's an extraordinarily difficult question. Well, okay, well, help me with it because I'm having difficulty myself. I think an appropriate recommendation is one that the Board believes should be in a fiscal plan. And I cannot, the Government of Puerto Rico cannot tell them don't put it into a fiscal plan. But why isn't it more naturally in response to Judge Tarullo's question to say here's the universe of recommendations. Only some of those recommendations are ones that the Board could have imposed unilaterally. Others it can only get by consent. If it doesn't get any of them, it can only put in the fiscal plan appropriate ones, those being the ones that it can impose unilaterally. So I guess the question then is which ones can it impose unilaterally? So then we need to look at 201 and 203 and figure out do they have the power to do that? Your Honor, 201 I think is the wrong place to look as to whether something can be binding because 201 does not have a self-enforcing mechanism. There's actually a specific section of PROMESA, 204. 204 is entitled really clearly Review of Activities to Ensure Compliance with Fiscal Plan. 204 doesn't give a power to legislate. It doesn't give a power to issue executive orders. It doesn't give a power to issue regulations. We submit that the way to understand whether something is binding is whether it can be enforced. And again 204 has these really extraordinary provisions and they are actually the subject of litigation that Brother Counsel and I will have next week in front of Judge Swain as to exactly what they mean. But 204 for example says, it does not say that the Oversight Board gets to review every piece of legislation on the books in Puerto Rico. It says if new legislation is passed, the Governor has to issue a certification as to whether the new legislation is significantly inconsistent or not with the fiscal plan. And our view is if the government says it's not significantly inconsistent, so it's just a little bit inconsistent or a tiny bit inconsistent, then the Oversight Board's power to reject or suspend that law is over. And the relevance of that I think to the larger question of whether a recommendation is binding is just that. If the Oversight Board cannot strike down a new piece of legislation, if it's just moderately inconsistent with a fiscal plan, how can something in a fiscal plan that's a recommendation be binding? How can, as Judge Swain found, every provision of a fiscal plan be binding on the government of Puerto Rico? The two don't add up. And I think since Congress went so far in establishing so carefully a balancing act between the Oversight Board and the government to lead, as Judge Swain did, the idea that anything put into a fiscal plan as binding policy on the government simply can't be squared with either the plain language of the statute or many, many canons of statutory construction starting with surplus. This would all be surplusage. It would be giving effect to the statute as a whole. But take the automatic future budget reductions. If I understand it correctly, what it basically says is if in year one you find out you don't need all the money allocated for a particular thing, instead of $100 you spend $75 on it, then the year two budget shall include only $75, not the $100. That's what it seems to say. The problem with that, Your Honor, is there's actually a mechanism for a budget to be certified independently each year and for the government to play a role. And for the government under Section 204C3 to ask for reprogramming. All of that would effectively rewrite PROMESA. And we don't think the board has and vitiate rights to the oversight that the government has under PROMESA. Let me ask you, Patrick, do you agree that the board, when push comes to shove, should it? And I realize, commending both parties here, pushes rarely come to shove in this whole process dealing with a small group of things here. But if push comes to shove on this, couldn't the board unilaterally say at the end of the process it's $75, not $100 for year two? So the board, after going through the process in Section 202, can decide the size of the room, to use the words of the Chairman of the Oversight Board, Mr. Carrion. It gets to decide how much money can be spent in a given year. Personally, I think with some parameters, if they said you can spend $1 next year, I won't stand here today and tell you that we wouldn't litigate. But yes, within certain norms, the board can set that as an amount of money. I don't think, though, it can short-circuit the entire process that it's required to go through. Your Honor, just to take a moment, I would like to... I'm going to have to ask you a question at some point, so let's finish with that. I was just going to compliment you. I'm having difficulty, frankly, with the fact that in Section 205, you have a whole process for dealing with the recommendations, okay? And then throughout this statute, there's no question that the term sole discretion, I think is the term used, is used... The last time I counted, I counted 27 times, which gives the board, without any question, absolute discretion in almost everything that goes on in this relationship. It does not use that term when it deals with recommendations anywhere that I found. Your Honor, no. Let me finish, because I still would like to... This is a question I'm going to ask the other side, too, by the way. I'll try to, if I remember it. It has to have some meaning, the fact that... In fact, I think there's a canon of interpretation. I mean, Congress knows how to use this terminology 27 times, and it doesn't use it when it comes to recommendations. Then the term recommendations has to have some meaning. I assume. We would ascribe to the words recommendations its plain meaning, which is a set of non-mandatory instructions. They're permitted to put in the fiscal plan whatever recommendations they want. That's their sole discretion. No, it's not whatever... Whatever deemed appropriate recommendations. But I don't think that gets to whether they're enforceable or whether they're something other than recommendations. And I think what's particularly interesting is compare and contrast 201 and 205. 205 says that if the government accepts recommendations, it has to do certain things. It has to come up with an implementation plan. It has to go down the road and say, here's what we're going to do, here's how it's going to work out. It's important to take a look at. But it doesn't give the Oversight Board the power to compel compliance with the government's... to the government. And 201, with respect to recommendations, doesn't even have a parallel provision to 205-B. It doesn't even say, here are the recommendations, Governor, that you must set out an implementation path and we can compel you to comply. And I think that reinforces how much all these are are just recommendations. Again, Judge Cairo, there are powers under 203. There are powers under 204 to actually sort of... I don't want to use a wrong analogy. I don't want to be thoughtful. But to basically say, here's what you have to do, and if you don't, there are consequences. There's nothing like that with respect to recommendations under 201. And we think that's... But there are under the other things. It was... you keep wanting to place, for example, automatic future budget reductions under the provision of 201 that says you can put in appropriate recommendations. Why isn't under it that the board's fiscal plan developed under the section shall provide a message to achieve fiscal responsibility, provide for the elimination of structural deficits, improve fiscal... Those are pretty broad budgeting fiscal powers. Why can't they say, we're relying on that power to say you need to cut back your spending in an area where you... The prior year demonstrated you didn't need all the money. So, Your Honor, even if it's not technically a recommendation, I still think they have to confront the issue of... PROMESA doesn't let them do that. Like, there's still a bar because you still have to go through a process. So I will be back on the bottom. And that's all the questions. Yeah, I'm having trouble understanding what the bar is to something that 201 specifically says that the fiscal plan shall include or shall consider or may consider. I think the bar would be in a fiscal plan saying, we don't have to adhere to the budgeting process that's set forward in 202 next year, which says nothing about automatic cuts. It says we're going to consider a budget anew each year. So you seem to be saying they jumped the gun. They could have imposed this on you had they gone through that process, but instead they just said we're imposing it on you and we're not going through the process. Yes, Your Honor, and I think that's critical because Judge Swain's decision says a fiscal plan is binding. And so binding shouldn't short-circuit or shortcut important statutory provisions. Maybe they can do it another way, but we think it's important for there to be... And then what is it that says that any particular 201 power cannot be exercised until you've first made the recommendation? I guess I don't think of it that way. In some ways, I think the focus on recommendation, and it's our focus, so maybe I articulated it the wrong way in our papers. It's not so much just whether it's a recommendation or not, although that's important. It seems that that is not important. It seems the whole recommendation provision, when we finally distill it, simplify the equation here, drops out entirely. And we're really engaged in an inquiry as to whether the other provisions, other than 205, give the Board the power to do something unilaterally with or without going through certain procedures. Yes, and whether what they put in the Board in a fiscal plan or budget is self-enforcing or whether the way you define what they can enforce is through provisions that say, revealed activities to comply with fiscal plan. Thank you, Your Honors. Good morning. May it please the Court. My name is Timothy Mungovin from Proskauer Rose on behalf of the appellees. There are two issues in this interlocutory appeal. The first is whether a Puerto Rico law authorizing the governor to spend money that was allocated in a prior year's budget but not included in the budget certified by the Board is inconsistent with PROMESA and therefore preempted. The second issue is whether any of the fiscal plan provisions, as challenged in the complaint, is a recommendation that the governor is free to ignore. And in summary, on the first issue, PROMESA explicitly gives the Board the ultimate authority over the fiscal plans and budgets in the Commonwealth. That includes the authority to determine the amount of the money that is allocated to the government and how that money can be spent. And any law that purports to allow the governor to source funds from outside the budget certified by the Board and to spend money in a manner not authorized by the Board's certified budget is inconsistent with PROMESA and therefore preempted. On the second issue, which the Court spent most of the time with my brother counsel, nothing in PROMESA authorizes the governor to characterize a provision in a fiscal plan as a recommendation that he is then free to reject. Well, the statute uses the word recommendation. It's not characterization. It's the way the law reads. It does, Your Honor. And that use of the word recommendation appears in 201B1K and 205. And in 201B1K... Actually, it appears in more places, but that's the ones we're dealing with here. Correct. In 201B1K, Your Honor, the statute states that a fiscal plan shall include or shall, quote, adopt appropriate recommendations submitted by the Oversight Board under Section 205A. In this case, the complaint does not allege that the Board submitted these recommendations under 205A. Instead, what the governor said is, I'm treating your notification of violation as including recommendations, and I'm treating those notices of violation as recommendations under 205A, and then I am rejecting them under 205B. Nothing in PROMESA gives the governor the authority to characterize a provision in the fiscal plan as a recommendation under 201B1K that he can then reject under 205. With respect to the word appropriate, because I know that we'll get there, so I'll just address it directly, what does appropriate mean in 201B1K? For starters, appropriate is, as Judge Swain found, the district court judge found, it's what the Board determines in its discretion in determining what complies with the mandate of PROMESA. The 201B is entitled requirements. 201B1K is one of the requirements in the section of 201B. The Board, therefore, determines what is appropriate to include in the fiscal plan, and that certification determination is beyond the court's jurisdiction to hear challenges to that certification determination. What I would also say is... If it had been a recommendation that had been rejected, would it be appropriate? Yes, Your Honor, it can still be appropriate, and here's why. What 201B1K refers to is recommendations under 205A. Congress did not point to 205B and say, only those recommendations that were deemed accepted by the governor can be included in the fiscal plan. It referred to... What you're saying, basically, is that the whole section on recommendations is... It means nothing as far as PROMESA goes. It's surplusage, as Mr. Friedman would argue. That's not the case, Your Honor. What Congress... What we assert in our brief and what the Board believes is that what 205 encourages is a dialogue between the Board and the governor and the government in order to improve the fiscal situation in the Commonwealth, in order to return the Commonwealth to fiscal health. Well, what do you say... I think one of the points I heard with respect to the automatic future budget reductions is that the way that works is in year two, in budget year two, if you want to reduce from the prior year 100 to $75, there's a process that you go through where you propose it, you have the communication, and then perhaps, although they won't concede this, perhaps in the end the Board could say it's going to be $75. But what you've done now is put in the budget or fiscal plan for year one a preemptive announcement that it shall be $75 for the next year. And so I think one of the arguments I hear is that you're skipping the iterative process that would normally play out with respect to year two. Well, that is the argument. I think you've characterized the argument correctly from my brother. I don't agree that there's a skipping of the process. This is part of the process that Congress envisioned, and I can get to the budget section and compliance with the budget. I don't think that that analysis fits neatly within the budgetary sections and compliance with the budget sections of PROMESA. But what I would say, so several things. First of all, the automatic budget cut issue is not necessarily before the court because the district court sustained that cause of action and the claims related to that in the court below. Secondly, with respect to that particular issue, it doesn't make surplusage of $205. It engages with $205, and it allows the board and the governor to discuss what is an appropriate amount to set the budget at. And then lastly, with respect to the language in $201 itself, the board has the sole discretion to determine what is appropriate to include. It is appropriate, of course, to engage with the government to assess what is appropriate to include. But it's not required, and that's a very important point that I would like the court to consider from the board's perspective. Why don't they use appropriate as sole discretion as they use elsewhere in the statute? It's incorporated by reference, Your Honor, because the word appropriate in subsection K is part of subsection B, which then the remainder of 201 indicates that anything that's in those requirements, and K is a part of the requirements of subsection B, is then deemed to be determined in the board's sole discretion. The word appropriate, Your Honor, could be read to mean the following. In 205A, 205A allows the board to make any recommendations. 205B then limits that in some respects by stating, in the case of any recommendation submitted under subsection A that are within the authority of the territorial government to adopt. And then it goes on to talk about what the territorial government can do. So not only is 205 surplusage, but also the word appropriate is surplusage. It wasn't necessary. According to your version, which may be the right one, I don't know yet, it was totally unnecessary to put appropriate in the statute. I disagree, Your Honor. In fact, the word appropriate, based on the explanation that I just provided, indicates that the board cannot incorporate into a fiscal plan a recommendation that it had made under 205A that the territorial government lacked the authority to implement. It would make no sense for the board to force the government to try to implement a recommendation under 201B1K that the government lacked the authority under 205B to implement. And that's how you can reconcile the use of the word appropriate in 201BK in referring to 205. And keep in mind, I want to go back to a point that I had made, but I think it's gotten lost based on some of the briefing. These were not recommendations that the board made under 205. This is the governor's characterization of provisions in the fiscal plan as recommendations, and then the determination by the governor that these recommendations, in his view, could be rejected by the government. If the governor's view of PROMESA allows the governor to determine what is a recommendation, then almost anything in a fiscal plan is vulnerable to this governor, the next governor that is elected, determining that something in the fiscal plan is a recommendation that he or she will then reject. And if that's the case, then the board's mandate to return the Commonwealth to fiscal responsibility and to access the capital markets won't just be undermined, it will be destroyed, because there will be no ability to impose fiscal discipline on the Commonwealth itself. I think that proves too much. It seems to me that that would only be true if recommendation versus requirement under the fiscal plan are mutually exclusive, which is the point that we were trying to get at with your brother earlier. At least I don't understand why we're talking about 205. The question is whether the board has the authority to impose these requirements. Why isn't it that simple? We believe that it is that simple, Your Honor. It is that simple. The board does have, as we stated in our brief, the authority to impose these requirements, these recommendations, if you characterize them as such. Even if they are recommendations, as we say in our brief, the board has the authority to impose them and mandate them under 201B1. In the Venn diagram, though, there will be parts of the recommendation circle that aren't in the overlap section, right? You know, it may be the board may think it's a good idea to enact certain legislation that will have some indirect effect on budgeting in the future, but it may be so far removed that it wouldn't be appropriate to include it in a fiscal plan, but it still could be a recommendation. That's exactly right, Your Honor. Let me give you a concrete example of that that this court actually considered in the legislature, the companion case to this one that the court considered in February and that I argued, and that is Law 80. Right. And in this fiscal plan that is the subject of this particular piece of litigation, Law 80 was a recommendation, and the court, the district court, appropriately concluded that the Law 80 language that the board incorporated in the fiscal plan was a recommendation to repeal Law 80. It wasn't a requirement because the board acknowledges that it is not attempting to impose the repeal of legislation as part of the fiscal plan, but it believed in that instance that the repeal of Law 80 was a good idea. That is a recommendation that was not mandated on the government. And in this complaint, in the district court's decision in evaluating a motion to dismiss that the board filed, the board concluded with respect to two of the provisions that the language that the board adopted was not mandatory. It was a recommendation. It was such that this is something that the government should do. And therefore, the complaint failed to state a claim because those conditions were not being imposed on the government. And so the board can use a fiscal plan to make lowercase r recommendations that the government should implement, but they're not mandated. But when the board uses mandatory language, it does have the authority to impose what the governor or someone else may argue is a recommendation on the government. And that recommendation becomes mandatory if mandatory language is used in the fiscal plan by the board. Can I ask you another question? It's on a different topic. With respect to this Act 230, I think it's 283GC3. I don't know what it is. You know what I'm talking about, the provision I'm talking about that deals with the executive, the legislature, the university, and a few other smaller agencies where you could essentially have no-year appropriations or appropriations that last at least three years. I think in your briefing you suggest or state that there aren't even actual funds that have been identified that would otherwise lapse to the general fund but for that provision. So what are we talking about here? I mean, how much money? I mean, I don't quite understand exactly what's going on with that. I think that's an excellent point, Your Honor, in that it's not clear how much money we're talking about. It's not clear where the reprogramming money even comes from. The government refers in its reply brief to leftover funds. There's no evidence anywhere that there are leftover funds. The Commonwealth is insolvent, and the idea that some money is somewhere sitting in a cigar box or a cash box that was unused in a prior year is a mystery to the board. But do you take the government, given its response in the reply brief, do you take it to also be saying that even an unfunded appropriation would be allowed to be extended into a future year without a funding source? That does seem to be the government's position, that it should have the right to do precisely that. But is it also your view that they've conceded that away in their reply brief when they talk about leftover funds? I can't say that they've conceded that away, Your Honor. What I believe is they're trying to describe a situation that is at best amorphous, and that's precisely the problem for the board. There's never been any identification of money that would be reprogramming that would be available to use in a current budget year from a prior year. So are we at a level of abstraction here where we've got a question about case or controversy on that particular issue? I don't believe so, Your Honor, and here's why. It's not abstract because what the board said in its fiscal plan is that any power to reprogram monies from prior years is suspended. And what Judge Swain said in the district court, you didn't need to do that, Lord, because that law is actually preempted. And so we aren't dealing with a concrete issue in terms of is there money. What we're talking about is a concrete issue. If the governor tried to do it or the government tried to reprogram, the board is taking the position that their ability to reprogram unused allocations from prior years or appropriations from prior years is suspended. And to be clear, that does not suspend the government's ability to come to the board under 204C and request the option or opportunity for the board to consider a request to reprogram monies in the current certified budget, the current year certified budget. And so the board was taking a position that only reprogramming from prior years is suspended. The government still has the ability under 204C to seek to reprogram monies from the current certified budget year. With respect to reprogramming itself, one of the points that the board does not even engage with, excuse me, that the government does not engage with in its opening brief, is whether the district court erred in finding that PROMESA preempts Law 230, which the board expressly stated in the fiscal plan, was suspended. And because the government did not challenge in its opening brief, the district court's determination of preemption of Law 230 is way of that argument on appeal. Could you, with respect to the actual tangible actions in the plan that are being challenged here, what is the enforcement vehicle for each one of them if the governor should not comply with them? So that's an interesting question, Judge Gatt. I would start by saying in the board's view there's really only one challenge provision that's before this court, and that is the reprogramming provision. The other is just an abstract issue on the relationship between 05 and 01? Yes, and what I would say is with respect to reprogramming, we use your question in the context of reprogramming. What happens if reprogramming occurs without the board's consent? The board has authority under PROMESA to take action to enforce the law, and it could file an action seeking, among other things, an adjudication or a declaratory judgment that the government had violated the fiscal plan and the budget. Does an independent agency created by the government of Puerto Rico first need to certify that there has been noncompliance with the plan? Not that I'm aware of, Your Honor. What the board could determine, if you look at 108A2, and the board filed a complaint on July 3rd on this precise issue, raising a claim under 108A2, among others, is that the government's, among other things, implementation of joint resolutions to allow reprogramming and the government's enactment of a particular law, Law 29, in fact altered the fiscal plan. And so the issue that you've raised is what is the enforcement mechanism is very much a live issue for the board right now, Your Honor, and that the board has filed a complaint on that very issue seeking, among other things, a declaratory judgment that the governor has violated PROMESA in enacting Law 29 after the certification of the new fiscal plan and enacting or implementing joint resolutions that allow for reprogramming. My brother has moved to dismiss. The hearing on that motion to dismiss will be a week from Friday in the Southern District of New York. I see that I'm out of time, but the short answer to Your Honor is there's no clear and good enforcement mechanism other than filing an action to enforce the board's authority under PROMESA. Unless the court has any further questions. Thank you. Thank you. Mr. Friedman, I would like you to tell me whether the what has been stated by your opponent to the effect that the at least some, if not all, of the questions that are raised under 201K, I'm skipping the in-between, the K, are matters that were not first brought under 205. In the entirety of the fiscal plan, some were, some were not. I don't recall the specific, I believe the governor did send a 205 rejection letter with respect to that specific issue and the governor's always, but to be honest, I don't exactly recall, Your Honor, whether that specific one on appeal was one that was first raised as a recommendation or not. We believe whether or not it's denominated as a recommendation, the governor, as the person on whom, according to Judge Swain's opinion, the entire fiscal plan becomes binding, has to be able to challenge the effect of the statute no matter what the government, no matter what the oversight board denominates a particular policy initiative as. I'm having some trouble understanding what concrete provisions are challenging on this appeal. I understand reprogramming is before us, but a number of the other provisions, some of them you actually fended off of the motion, the Rule 12 motion below. So what specific action do you understand is before us that you're challenging? The certified question is a very broad one. I agree, Your Honor, there has become over the evolution of this case something much more amorphous and I think the focus really now has shifted to the question. So while we think there was a VIPE controversy when we initiated the lawsuit, I do struggle sometimes in pinpointing exactly the VIPE issue that remains. We certainly did not think that there was a—we were seeking an advisory opinion. We thought we were seeking an appropriate declaratory judgment in the face of recommendations that were sought to be imposed on us. So you need to anchor it down to some provision that you're challenging by saying this runs afoul of our 205 theory, which to me, therefore, turns to there's nothing in PROMISA that authorizes this, and I'm having trouble understanding exactly what it is you're challenging at this point before us. So we are challenging the entirety of restrictions on reprogramming. Got that. And— But then automatic budget future directions, that's reductions. That's actually still before Judge Swain. That is still before Judge Swain. The agency consolidation, you fended off the motion on that. Right. The elimination of employee benefits, you fended off the motion on that. Yes. And then corrective measures. We fended that off. So what are we doing here other than reprogramming? I think it's predominantly reprogramming. And then reprogramming is a specific provision in the statute on reprogramming. It is a specific provision, and we want to ensure that that's fully protected, and the governor has the full rights to seek reprogramming. In the fiscal plan, it certainly was not apparent to us that there was a complete preservation of rights, and we also believe that suspension in toto of Puerto Rico law that is not necessarily inconsistent with 204C was inappropriate, that the court's determination that that was entirely preempted was unnecessary and exceeded the bounds of the issue before Judge Swain. And so I agree that the evolution of this case has moved from something quite broad to something very narrow. Excuse me. The issue that remains, was that a part of a 205 process? I believe it was, Your Honor, and I believe we include that. Was it part of a recommendation that was made by the board that was rejected by the governor? I believe it was, but I don't remember actually whether it was a recommendation, but even if it was not a formal recommendation or denominated as a recommendation, its inclusion in 201 we still think exceeds the bounds of what the board is able to enforce. But then 205's got nothing to do with that. 205 has little to do with that, other than the reference to 205 as defining what is a recommendation, because 201K does, B1K does refer to 205, and so in terms of denominating what a recommendation, including 205A, which is incorporated into 201, uses the word may with respect to recommendations. And on the reprogramming issue, as I understand it, there's a specific provision in PROMESA that deals with reprogramming of any funds that were in a certified budget. Yes, Your Honor. So even on low programming, the narrow issue we're talking about is funds that arguably were left over from the last non-certified budget. Correct. And we don't even know if there are any? So I agree with Attorney McGovern that the government has solvency issues, but it does have liquidity. And so certainly it has liquidity that can be, we believe, brought forward. Why in the world would Congress have wanted to put in PROMESA, have these budget controls, get the island back on a fiscal policy, the island filed for protection under the bankruptcy provision, and yet you want us to hold that if there's some money left around somewhere on a liquidity basis for this insolvent entity, the board can't keep the governor from spending that any way he wants? I think the board might be able to do that using its powers under 203 with respect to if there's been an expenditure in excess of the overall aggregate funds the board approved for any given year. The board can then reduce funding under 203. But it can't control how that leftover money gets spent by the governor. It's his own private fund to deal with, not for private purposes, but whatever he wants. And then to be, for the board to then invoke discipline if funds are expended in excess as set forth in 203. What do you say to the argument that by not raising your preemption defense until the reply brief you've waived it? I believe the issue is sufficiently in front of the court based on the pleadings and our seeking certification of Judge Swain's opinion on preemption. But you didn't argue it in your opening brief is the point. I will take counsel's statement if we did not, in fact, raise it at all. I have a different recollection, but the record will speak for what the record says. Okay, so if you didn't raise it in your opening brief? If we didn't, we still believe the court has the power based on our reply brief and the issues raised in the certification and the entirety of the process to address it. Okay, thank you. Anything else?  Thank you, Your Honor.